FLORENCE A. COVEY *et al.*

*v.*

ANGIE G. DINSMOOR *et al.*

*Opinion filed April 18, 1907.*

WILLS—*a devise of land which testator has contracted to sell passes both the title and beneficial interest.* A devise of land to the testator's wife and to her heirs and assigns forever, subject to a contract for the sale of the land which the testator had made and under which the purchaser had given a series of notes, which, when paid, would entitle him to a deed, passes both the title and the beneficial interest to the wife and does not make her a mere trustee to carry out the contract, notwithstanding there is a residuary clause in the will, and the wife is entitled to the unpaid notes and the money to be collected upon them. (*Wright* v. *Minshall,* 72 Ill. 584, adhered to.)

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Whiteside county; the Hon. F. D. RAMSAY, Judge, presiding.

JARVIS DINSMOOR, for appellants:

A residuary clause carries everything the testator has not clearly excepted from the operating of such clause. Page on Wills, 594; *Molineaux* v. *Raynolds,* 55 N. J. Eq. 187.

A devise by a testator to his wife of an estate which he had lately contracted to sell to A has been held to be a mere devise of the legal estate to enable her to carry the contract into execution, and did not entitle the devisee to the purchase money. 2 Jarman on Wills, (5th Am. ed.) 692, 289; O'Hara on Construction of Wills, 63, 64; Theobald on Law of Wills, (2d Am. ed.) 203, 204; Hawkins on Wills, (2d Am. ed.) 39; Beach on Wills, sec. 268; Calvert on Parties in Equity, 293; Chaplin on Wills, 446; Woerner on Law of Administration, (2d ed.) 593; Schouler on Wills, (3d ed.) 498; 2 Underhill on Wills, 972; Page on Wills, 568; *Lawes* v. *Bennett,* 1 Cox, 167; *Townley* v. *Bedwell,* 14

Ves. Jr. 591; *Knollys* v. *Shepherd,* 1 J. & W. 499; *Drant* v. *Vause,* 1 Y. & C. 579; *Emuss* v. *Smith,* 2 DeG. & S. 722; *Weeding* v. *Weeding,* 1 J. & H. 424; *Water Co.* v. *Session,* 18 R. I. 411; *Cooper* v. *Cooper,* 21 Ind. 124.

C. L. & C. E. SHELDON, for appellees:

The devise of the land in question by the testator to his wife vested in the devisee not only the legal title to the land but the entire beneficial interest therein,.including the notes and the contract. *Wright* v. *Minshall,* 72 Ill. 584; *Dodge* v. *Gallatin,* 29 N. E. Rep. 107; *Livingston* v. *Newark,* 3 Johns. Ch. 312; *McKinnon* v. *Thompson,* 3 Johns. 307; *Malin* v. *Malin,* 1 Lindell, 625; *VanWagenen* v. *Brown,* 2 Dutch. 196; Coote on Mortgages, 570; Ram on Wills, 202; Ram on Estates, 425; *Woods* v. *Moore,* 4 Sandf. 579; *Atwood* v. *Weems,* 99 U. S. 183; *Gibbes* v. *Holmes,* 10 S. C. Eq. 484; *Galliers* v. *Moss,* 9 B. & C. 267; *Wall* v. *Bright,* 1 J. & W. 494; Sugden on Law of Property, 170; 20 Am. & Eng. Ency. of Law, (2d ed.) 715; Schouler on Wills, (3d ed.) sec. 498; *In re Lefebvre's Estate,* 100 Wis. 192; 2 Jarman on Wills, (5th ed.) 301.

Where a beneficial interest in land and funds is vested by a will, the rent of the one and the interest from the other are mere accretions, which go with the property and vest with it in the *cestui que trust. Howe* v. *Hodge,* 152 Ill. 252.

Devisees are entitled to all the rents and profits of land accruing after the death of the testator. *LeMoyne* v. *Harding,* 132 Ill. 23.

Mr. JUSTICE CARTWRIGHT.delivered· the opinion of the court:

James Dinsmoor died on August 24, 1903, at his residence in Lowell, Massachusetts, leaving a last will and testament executed August 16, 1902, and leaving his widow, Angie G. Dinsmoor, and his three children, Florence A.

Covey, Jarvis Dinsmoor and Alice Dinsmoor, surviving him. By the will he provided for the payment of his debts and funeral expenses and made various bequests and devises to his wife, Angie G. Dinsmoor, and gave his law library and office fixtures to his son, Jarvis Dinsmoor. He then devised the residue of his estate to his daughter Florence A. Covey and her husband, James I. Covey, in trust for themselves and the survivor of them during their natural lives, and for the use of his son, Jarvis Dinsmoor, and his daughter, Alice Dinsmoor, and the survivor of them, and with further provisions for the final disposition of the residuary estate. By a codicil dated May 21, 1903, he appointed D. N. Foster executor of the will. After his death the will was admitted to probate in Massachusetts and the executor qualified. One of the devises to his wife was as follows:

"And I do further give and bequeath to my said wife the south-west quarter of section 6 in town 21, north, in range 7, east of the fourth P. M., in the county of Whiteside and State of Illinois, and the north half of the south-west quarter of the south-east quarter of said section, township and range, together with the east half of the south-east quarter of section 1 in township 21, in range 6, east of the fourth P. M., all of which parcels of real estate are situate in the county of Whiteside and State of Illinois, and subject to my contract of sale to George H. Cassens, now living on said premises under and by virtue of my said agreement with him; to have and to hold the same to her, my said wife, her heirs and assigns forever."

A dispute arose between Angie G. Dinsmoor, the widow, and the trustees and residuary legatees, as to the ownership of eight notes given by Cassens for a part of the purchase money for the land, the widow claiming the notes by virtue of the devise, and the other parties contending that the devise of the land vested in the widow the legal title to the real estate for the purpose of enabling her to carry the con-

tract into effect by conveying such legal title to Cassens upon his performance of the contract, but that she did not become entitled to the purchase money. The widow and the trustees each demanded the notes from the executor, and the appellants, as trustees, filed their bill in this case in the circuit court of Whiteside county asking the court to construe that clause of the will, and making the widow and other children and Cassens and the executor defendants. Angie G. Dinsmoor by her answer claimed that she was entitled to the notes by virtue of the will. The executor by his answer asked the court to construe the will. Cassens answered, asking the court to determine to which of the claimants the notes belonged, and Jarvis and Alice Dinsmoor also answered making the same claims as appellants. Replications having been filed the cause was heard, and the court construed the will as vesting in the widow the title to the eight notes in controversy, and the moneys collected by the executor on account of them, and to the beneficial interest in the contract between the testator and Cassens. The Appellate Court for the Second District affirmed the decree.

James Dinsmoor was a well known lawyer of Whiteside county, where he practiced his profession for nearly forty years. He was the owner of about six hundred acres of land in that county, including the farm in question. He married three times, and his three children, Alice Dinsmoor, Jarvis Dinsmoor and Florence A. Covey, are children of the first marriage. He married the defendant Angie G. Dinsmoor on October 1, 1896, and on September 4, 1901, he made a contract with George H. Cassens for the sale of the farm devised by the clause of the will in question. The contract was signed by James Dinsmoor and Angie G. Dinsmoor, his wife, and by George H. Cassens, and it provided that if Cassens should perform the covenants therein contained on his part, a conveyance should be made to him. Cassens agreed to pay $18,865 for the farm, and he paid

$465 and gave a series of twelve notes maturing up to
March 1, 1908, amounting to $4000 of principal and inter-
est, on the purchase money. Upon payment of these notes
according to their terms a deed was to be given and Cas-
sens was to give back a mortgage for $14,865, the balance
of the purchase money, due in five years, with interest at
five per cent. Eight of these notes were remaining in the
possession of Dinsmoor, unpaid, at the time of his death,
and they are the subject of this controversy.

In construing the will the intention of the testator is
to be sought for, and that intention is to be determined from
the language used in the will. Effect is to be given to such
intention unless it contravenes some rule of law or public
policy. The residuary devise carries with it everything not
otherwise effectually disposed of by the will, and the only
question to be decided is whether the testator intended by
the devise of the land, subject to the contract of sale, to give
to the devisee the title and beneficial interest which he had
in the land or to make her a simple trustee of the legal title.
That question was decided by this court in 1874 in the case
of *Wright* v. *Minshall, 72* Ill. 584. In that case the testator,
prior to the execution of his will, had contracted to sell his
lands in Clay county and had executed a bond for a war-
ranty deed to the purchaser upon the full payment of the
purchase price, and had received notes of the purchaser
which were unpaid at the time of his death. The provision
of his will was as follows: "I give and bequeath and de-
vise all the real estate and land, together with all the ap-
purtenances thereto belonging, which I have and possess in
the county of Clay and the State of Illinois, to my beloved
sister, Mrs. Elizabeth Minshall, of the county of Lafayette
and State of Missouri." The notes were paid to the admin-
istrator with the will annexed, and the contest was between
the heirs-at-law and the devisee for the proceeds. The de-
cision was that the proceeds of the real estate devised to
Elizabeth Minshall subsequent to the contract of sale be-

longed to her. The court said that at the time the will was made the testator held the legal title to the land and was to all intents and purposes the legal owner of it, and had full power to devise it; that if the party who agreed to purchase it had failed to perform the contract, or it had been rescinded, it would not be pretended that the title would go to the heirs-at-law; that the legal title having been devised to Mrs. Minshall, she was rightfully entitled to the proceeds of that legal title when conveyed, and that the intention of the testator was to devise to her the title he had in or to the land, and that was the purchase money, though described in the will as land.

It would not ordinarily be necessary to say more in the decision of this case if it were not that counsel, in elaborate argument showing great research, insist that the rule of construction apparently adopted in that case was not in fact established. The argument proceeds upon the grounds, first, that there was no residuary clause in the will of Wright, and it would have been proper to hold that the beneficial interest passed to the devisee by virtue of the presumption that the testator intended to dispose of his entire estate; and second, that there were text books and decisions declaring a different rule which were not referred to by the court, and therefore the court could not have intended to establish a rule differing from such authorities. Counsel also say that the case of *Woods* v. *Moore,* 4 Sandf. 579, there cited, did not sustain the decision but was a case of correcting a misdescription. In the *Wright case* a devise was made of land when the interest of the testatrix therein was a mortgage interest. It was contended that the lands did not pass under the devise because the testatrix had no title in them, and the mortgage did not pass because a devise of land is a distinct thing from a mortgage debt. The decision was not on the ground of correcting a mistake of the testatrix, which could not be done, but the court held that there was sufficient correspondence in the description to

afford the means of identifying the subject of the gift; that the intention of the testatrix was to give the mortgage interest, and that the devise of the land was a devise of that interest. It is true that there was no residuary clause in the will of Wright and that there is a strong presumption against intestacy, but the decision did not go upon the ground of such presumption at all, but upon the ground that the intention of the testator was to put the devisee in his place and to give her such title and interest as he had in or to arise out of the land. Although the presumption would have strengthened the conclusion it was not the basis of the decision.

There are text books and decisions which announce a contrary rule of interpretation, and they generally refer to the decision in *Knollys v. Shepherd,* 1 J. & W. 479, which seems to have been the principal source of the doctrine that a devisee in a case like this acquires no beneficial interest but becomes a naked trustee of the legal title. Mr. Knollys owned several estates subject to mortgages and had contracted to sell one of them to Sir Thomas Metcalf. By his will he gave to his dear wife the estate which he had so contracted to sell, together with the appurtenances thereto belonging, to hold to her, her heirs and assigns forever. He also gave her, by his will, all his personal estate, subject to the payment of his debts and funeral expenses and his legacies. It became material to determine whether the wife took the beneficial interest in the estate subject to the contract, in view of the provision for the payment of debts, funeral expenses and legacies. Lord Eldon decided that the devise was only of the legal estate, to enable her to carry the contract into execution by conveying the estate. The text books and decisions following that case state the rule, substantially, that where a testator contracts to sell the devised estate and dies without having executed a deed to the purchaser, the devise remains in full force as to the legal estate and no further, that being all the interest the testator

has to dispose of at the time of his death and the unpaid purchase money constituting a part of his personal estate. Where any reason is given, reference is made to the rule of equity that the testator in such case has no beneficial estate or interest in the land to dispose of, the entire equitable estate in the land having become vested in the purchaser, by whose will it would pass as real estate, and the vendor's estate having been converted into personalty as a part of his personal estate. Such is the rule in equity, but we are concerned only with the intention of the testator, and have been unable to see any reason why his intention should be determined solely from the existence of an equitable fiction. In case of an executory contract for the sale of land, equity puts in operation the principle that equity regards as done what ought to be done, and as soon as a contract is made whereby an owner agrees to sell and convey a tract of land in the future upon payment of the purchase price, although nothing has been paid and the time for conveyance has not arrived, the contract is regarded as executed and as operating to transfer the estate from the vendor and vest it in the vendee. The vendee is looked upon as the owner of the land to the entire extent provided for by the contract, and equity says that the vendor holds the legal estate as a mere trustee for the vendee, with a lien on the land for the security of the unpaid portion of the purchase money. It says that the vendee holds possession of the purchase price in trust for the vendor, regardless of the question whether he has any fund or whether the vendor has become entitled to it, and the vendor's legal estate is held on a naked trust for the vendee. In some respects equity treats the contract as executory, and a conveyance to a *bona fide* purchaser without notice cuts off the equitable estate of the vendee. As distinguished from equitable rules, the law views the contract as producing no effect on the estate or title. At law the vendor assumes the obligation of his contract or becomes liable for the payment of damages for its non-

performance, and the vendee assumes the obligation to pay the purchase money, but the estate only passes to the vendee upon execution and delivery of a deed. In *Wright* v. *Minshall, supra,* the court viewed the rights of the parties and their estates from the legal standpoint, and held that the testator was the legal owner of the estate with full power to devise it, and that his intention was that the devisee should have that legal title or the proceeds of it. The fiction of equity is diametrically opposed both to the rules of law enforced by courts of law and the actual facts, and has been adopted to grant relief peculiar to courts of equity.

It seems more likely that the testator regarded the land as his own until the performance of the contract and had in view the possible insolvency of Cassens or a failure to perform his contract, than to have considered that he was a trustee of the title for Cassens, who held the purchase price in trust for him. He manifested no intention to make his wife a mere trustee, but the words of the will are sufficient to confer a beneficial interest upon her, subject only to the right of Cassens to have a deed upon performance of his contract. The contract provided that when the interest and $4000 of the principal should be paid on March 1, 1908, a conveyance should be made and Cassens should give a mortgage for $14,865, the balance of the purchase money. The devise of the land being to the wife, the conveyance must be made by her, and it is beyond question that the testator intended the mortgage and notes thereby secured to be given to her. The bill makes no claim, and it is not contended in argument or otherwise, that the devise does not carry this mortgage for the greater part of the purchase money with it, and we see no ground for distinction as to the testator's intention between the mortgage to be executed by Cassens when he should pay sufficient to make the mortgage lien secure, and the notes which he gave for another part of the purchase money before the conveyance. Recognizing fully the existence of authorities to the contrary, we

are unable to reach a different conclusion from that reached in *Wright* v. *Minshall, supra,* and are entirely satisfied with the rule there stated.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*