HELEN E. LEATHERBEE AND STATE STREET TRUST COMPANY, EXECUTORS U/W ROBERT W. LEATHERBEE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51513. Promulgated March 24, 1936.

*Percy E. Gleason, Esq., Frank A. Lynch, Esq., S. F. Moody, Esq., Hubert Van Hook, Esq.,* and *Harry J. Gerrity, Esq.,* for the petitioners.

*Bruce A. Low, Esq., L. H. Rushbrook, Esq.,* and *R. C. Grauer, C. P. A.,* for the respondent.

OPINION.

LEECH: The only issue of law involved here is the question of when petitioners' decedent acquired the premises described in the foregoing lease and option.

Respondent, in his original computation of the gain to petitioners' decedent on the sale in 1925, used a basis of $180 per acre for the entire acreage then sold. In his amended pleadings, respondent affirmatively alleges the purchase of the acreage covered by the present lease and option by petitioners' decedent, in 1914 at a cost of $200 per acre. He thus asserts that such cost is the proper basis for computation of the disputed gain on the sale of that acreage by decedent in 1925.

The petitioners take several positions—all of them premised ultimately upon the proposition that the decedent acquired an interest in the lands described in the pending lease and option, at the execution of that instrument.

That premise is unsound. The instrument under consideration was not a contract of sale. An essential element in construing it as such is the presence of a binding obligation upon the seller to sell and the buyer to buy. *Lawler* v. *Commissioner*, 78 Fed. (2d) 567. Cf. *Jefferson Gas Coal Co.*, 16 B. T. A. 1135; affd., 52 Fed. (2d) 120; *A. B. Watson*, 24 B. T. A. 466; affd., 62 Fed. (2d) 35; *Charles J. Derbes*, 24 B. T. A. 276, and cases there cited; *C. A. Cochran*, 23 B. T. A. 616.

This requisite is absent here. The terms here, under which the privilege to buy could be exercised, were not fixed in the writing since the payments were to be made in a manner "mutually agreeable" *when* the option was exercised. The privilege to buy was as separate and distinct from the agreement of lease as though they had been in separate instruments. No part of the rent here reserved and paid was allocable, under any circumstances, including that of the exercise of the option, to the purchase price of the land. The entire "rent" was paid, as such, solely for the use of the premises during the lease term. The only credit on that purchase price, in the event of the exercise of the option, was the $500 paid as a specific and separate consideration for the option itself.

Since the property here involved is situate in Illinois, the law of that state is authoritative in construing the pertinent instrument, which fixes the time when petitioners' decedent acquired the property described therein. *Poe* v. *Seaborn*, 282 U. S. 101. The party of the second part in this instrument and, *a fortiori*, petitioners' decedent by virtue of the written assignment and its acceptance (*Adams* v. *Peabody Coal Co.*, 230 Ill. 469; 82 N. E. 645; *Guyer* v. *Warren*, 175 Ill. 328; 51 N. E. 580), was a mere optionee of the real estate

included in that instrument and, as such, acquired no title therein until the exercise of that option in 1914. *Barnett* v. *Meisterling*; 327 Ill. 564; 158 N. E. 806. Cf. *Richardson* v. *Hardwick*, 106 U. S. 252; *Todd* v. *Citizens' Gas Co.*, 46 Fed. (2d) 855; certiorari denied, 283 U. S. 852. This is in line with the weight of authority, as was decided by the Supreme Court in *Commissioner* v. *San Joaquin Fruit & Investment Co.*, 297 U. S. 496.

Therefore, since petitioners' decedent did not acquire any title in the premises covered by that written instrument, until February or March 1914, when he purchased it at a cost to him of $200 per acre, the basis for the computation of gain or loss of the petitioners' decedent on the sale of that acreage in 1925 is that cost.

This brings us to the first question of fact, which is the fair market value of the 197.504 acres which petitioners' decedent purchased prior to March 1, 1913.

As stated by the Supreme Court in *Montana Railway Co.* v. *Warren*, 137 U. S. 348, "at best, evidence of value is largely a matter of opinion, especially as to real estate."

The spread is wide between the values to which the several witnesses testified. The petitioners introduced testimony of two witnesses, one of whom fixed the value of the acreage now under discussion as $1,000 at the crucial date. The three witnesses of the respondent gave it a value of $225 and $250 per acre, as of the same date.

Between 1911 and 1913, the market for small farms and country homes in the vicinity of the tract here in dispute, had increased rapidly. The evidence of sales of comparable property in the same neighborhood, somewhat before and after March 1, 1913, indicates this fact. One of the respondent's witnesses testified to actual sales, in 1913 and 1914, of property directly across a road from the present acreage, at $500 per acre. True, he attempted to deprecate or destroy the natural effect of that testimony. However, in view of all the other evidence in the record, that attempt did not entirely succeed. A careful consideration of all the testimony, in the light of the respective qualifications of the several witnesses, leads us to the conclusion, already stated, that the 197.504 acres which petitioners' decedent acquired prior to March 1, 1913, had a fair market value on that date of $400 per acre.

The other issue of fact is the correctness of respondent's action in disallowing the deduction by petitioners' decedent on his income tax return for 1926 of part of an alleged debt as having become worthless to that extent during the taxable year.

At the outset, it must be noted that this so-called debt was said to be due from the brother of the petitioners' decedent. This fact

subjects the transaction to rigid scrutiny. *Storey* v. *Storey*, 214 Fed. 973.

No written evidence of this asserted debt was executed, at least, until after the questioned deduction. No such evidence was offered to establish even that later execution. No evidence appears, either of the fact of indebtedness or of its partial worthlessness in the taxable year, except the oral and, here, unconvincing testimony of the accountant who prepared the return upon which the deduction was taken. On the whole record, we are not satisfied that the petitioners have sustained their burden of proof in establishing error of the respondent in the disallowance questioned. The respondent is sustained on this issue.

*Decision will be entered under Rule 50.*